## ISO Processing Agreement

This ISO Processing Agreement ("Agreement") is made on 5|19 , 2004 ("Effective Date") by and between CPS Group, Inc., d/b/a Cynergy Data™, a New York corporation with offices located at 109-15 14th Avenue, Suite 200, College Point, NY 11356 ("Cynergy Data") and Process America, a California corporation with offices located at 17015 Ventura Blvd., Encino, CA 91316 ("ISO").

### Recitals

Cynergy Data is in the business of providing credit and debit card processing services to merchants. ISO desires to solicit and refer merchants to Cynergy Data for those services. Therefore, in consideration of the mutual promises set forth below, the parties agree as follows:

### I. Definitions

The following terms when used in this Agreement will have the meanings set forth in this Section:

"Association" means Visa, MasterCard, and any successor organization.

"Authorization" means the process detailed in the Rules whereby a Transaction for a specified amount is approved by the issuer of the Credit Card or Debit Card, or such issuer's agent.

"Chargeback" means a Transaction that has been returned to the Merchant by the card issuer in accordance with the Rules.

"Compensation" means all Merchant revenues collected by Cynergy Data from Merchants in excess of the fees set forth in Exhibit A, Cynergy Data Fees.

"Credit Card" means a valid and unexpired card issued by, and bearing the symbols of, Visa or MasterCard. When appropriate, the term also includes valid and unexpired cards issued by American Express, Diners Club, Discover, and JCB.

"Data Capture" means the process of retaining all necessary data relating to Transactions and transmitting such data to Member in order to settle the Transaction.

"Debit Card" means a card bearing the symbols of debit card networks processed by Cynergy Data.

"Event of Default" means any one or more of the events listed in Section 6.3.

"ISO Account" means that deposit account designated by ISO at an ACH-receiving institution into which all funds owed ISO are deposited by Cynergy Data, in accordance with this Agreement.

"MasterCard" means MasterCard International, Inc.

"Member" means that Visa/MasterCard member financial institution designated by Cynergy Data.

"Merchant" means a business that has entered into a Merchant Agreement and to which ISO provides services under this Agreement.

"Merchant Agreement" means the written contracts entered into between Cynergy Data, Member, and a Merchant, which enables the customer to participate in the Merchant Program.

"Merchant Loss" means any loss incurred by Cynergy Data or Member for any reason

1


DEFENDANT'S EXHIBIT
Trial
A

attributable to a Merchant, including but not limited to losses due to uncollected Chargebacks and fees and Merchant fraud.

"**Merchant Program**" means the package of services offered by Cynergy Data, ISO and Member under this Agreement.

"**Ownership Trigger Date**" is defined in Section 2.6.

"**Reserve Account**" means that bank account, in Cynergy Data's name, referenced in Section 3.11.C.

"**Rules**" means the written regulations and procedures issued by Visa, MasterCard, Debit Card networks, American Express, Discover, JCB and Diners Club, as amended from time to time.

"**Settlement**" means the process, detailed in the Rules, of transferring the monetary value of Transactions from a Credit Card issuer or Debit Card cardholder to a merchant.

"**Third Party Authorization Network**" means a company providing Authorization and Data Capture services for Merchants.

"**Transaction**" means the purchase by a cardholder of goods or services from a Merchant, by use of a Credit Card or Debit Card. The term includes credit transactions and adjustments, when appropriate.

"**Visa**" means Visa U.S.A., Inc.

"**VIMAS™**" means the Virtual Merchant Application System program owned and operated by Cynergy Data and all related software and system documentation.

## II. Cynergy Data Responsibilities

**2.1 Services.** Cynergy Data will provide Merchants with access to Third-Party Authorization Networks for the Authorization and Data Capture of Transactions. Cynergy Data will provide Settlement services to Merchants. Cynergy Data will notify, or cause Member to notify, ISO of a Chargeback, ACH reject, or Transaction reject. Cynergy Data will provide access to Third Party Authorization Networks to authorize, capture and transmit data relating to American Express, Discover, Diners Club and JCB and Debit Card transactions pursuant to agreements entered into between Merchants and such card issuers. Cynergy Data will encourage and assist ISO's sponsorship into Visa as an Independent Sales Organization and MasterCard as a Member Service Provider by Member. Cynergy Data will provide Merchant customer service, Merchant supplies, and will provide terminal programming.

**2.2 Reporting.** Cynergy Data will provide to ISO a separate, individualized agent code or group or association level segregation on Cynergy Data's merchant accounting system. Upon ISO's request and at ISO's cost, Cynergy Data will provide ISO with appropriate reports detailing the revenues and profitability paid by Member to Cynergy Data attributable to Merchants. If agreed to in writing by ISO, Cynergy Data will provide such reporting via Cynergy Data's VIMAS system.

**2.3 Training.** Cynergy Data will provide necessary training to ISO employees to enable such employees to service and sell credit and debit card processing services to Merchants. If Cynergy Data cannot provide such training, Cynergy Data will make its best efforts to procure necessary training from relevant third parties.

2

**2.4 Retrievals and Chargebacks.** Cynergy Data has contracted with Member to provide, and will provide to Merchants, retrieval and Chargeback data processing and customer service related to retrievals and Chargebacks.

**2.5 Performance.** Cynergy Data agrees to use its reasonable best efforts to provide the services as described in Article II; provided, however, that nothing in this Agreement shall create, directly or indirectly, any obligation on the part of Cynergy Data to provide services (including the timing of delivery of such services) that it is unable to provide under the its contract with Member. Cynergy Data shall perform all services consistent with the standards of performance utilized by Cynergy Data in performing such services for its other customers. Cynergy Data does not warrant or represent that its services will be uninterrupted or error free nor will it be liable for damages resulting therefrom, except where any interruption or error is due to the gross negligence, recklessness or willful misconduct of Cynergy Data. The warranties set forth above constitute the only warranties with respect to the services and are in lieu of any other warranties, written or oral, statutory, express, or implied, including without limitation the warranties of merchantability and fitness for a particular purpose.

**2.6 Ownership of Merchant Agreements.**

A. <u>Ownership</u>. The parties agree that upon execution of this Agreement, throughout the Initial Term, and until the Ownership Trigger Date, Cynergy Data shall own and have all rights to the Merchant Agreements. On the Ownership Trigger Date, ownership of the Merchant Agreements will vest in ISO. The "Ownership Trigger Date" means anytime after the Initial Term, and the first day of the month following the month in which all of the Ownership Trigger Events are satisfied. An Ownership Trigger Event will be deemed satisfied immediately upon its occurrence. "Ownership Trigger Events" will occur in a month: i) following 3 consecutive calendar months during which the amount paid by Cynergy Data to ISO under this Agreement equals or exceeds 0.85% of the monthly dollar processing volume attributable to Merchants; ii) following 3 consecutive calendar months during which the net amount paid by Cynergy Data to ISO equals or exceeds $75,000; and iii) during which no outstanding material breach of this Agreement by ISO is pending. Upon satisfaction of the conditions set forth in Section 2.6.B, both parties shall execute an asset transfer agreement reasonably satisfactory to both parties pursuant to which ownership rights in Merchants will be transferred from Cynergy Data to ISO for nominal consideration.

B. <u>Transfer of Merchants</u>. At any time while this Agreement is in effect and after the Ownership Trigger Date, ISO may move all or any portion of the Merchants to a third party credit card processor, subject to all of the following: i) ISO grants to Cynergy Data a right of first refusal on the Merchant portfolio. ISO shall provide written notice to Cynergy Data of a bona fide offer by a third party to purchase rights under the Merchant Agreements. The notice shall contain the material terms upon which the third party has agreed to purchase the such Merchant Agreements. Cynergy Data shall inform ISO within 15 days whether Cynergy Data desires to match such offer. If Cynergy Data matches the third party's offer, ISO shall sell the Merchant Agreements to Cynergy Data. If Cynergy Data indicates that it will not

3

match the bona fide third party offer, ISO may move the portfolio, subject to this Section. ii) ISO shall pay to Cynergy Data an exit fee equal to the average monthly revenue derived by Cynergy Data over the most recent 3 month period, excluding the month of December, attributable to the Merchant Agreements to be transferred multiplied by the greater of either a) the multiple figure offered by the third party, or b) 30. iii) The execution of an assignment agreement between Cynergy Data, Member, and the new credit card processor containing terms typical of such a transaction and satisfactory to Member and Cynergy Data. Upon satisfaction of i) and ii) and iii), Cynergy Data will cooperate in transferring the Merchant Agreements to the third party designated by ISO. ISO understands that all conversion costs incurred by Cynergy Data will be borne by ISO, and that ISO must inform Cynergy Data 90 days prior to the transfer date.

**2.7 VIMAS License.** If ISO orders such service, as indicated in writing, Cynergy Data grants to ISO a non-transferable, non-exclusive license to use for its own business the VIMAS system for the term of this Agreement and under the terms and conditions determined by Cynergy Data from time to time. This license will terminate and ISO will cease using the VIMAS system upon termination of this Agreement for any reason. ISO agrees to pay to Cynergy Data all relevant VIMAS fees. ISO shall have no right to use, replicate, or obtain any ownership right in any business methods or processes utilized by Cynergy Data. Further, ISO shall have no right to obtain source code for VIMAS by any means. ISO shall not reverse engineer, decompile, disassemble, translate, modify, disclose to any third party, or develop any software that is competitive with VIMAS, or any part of it, without the prior written consent of Cynergy Data. ISO shall have no right to use, market, distribute, sell, sublicense, deliver or otherwise transfer VIMAS for or to any third party. ISO shall not copy, nor allow others to copy, VIMAS. ISO shall not remove from VIMAS, or its packaging, or alter, any trademarks, trade names, logos, patent or copyright notices, or other notices or markings, or add any other notices or markings to VIMAS, or its packaging. ISO will not challenge Cynergy Data's ownership of VIMAS or do anything that would contest or impair any of Cynergy Data's rights in VIMAS

### III. ISO Obligations

**3.1 Marketing.** ISO will market the credit and debit card processing services of Member, and will encourage customers to become Merchants. ISO will refer all prospective merchant customers to Cynergy Data. Upon Cynergy Data's rejection of a prospective merchant, ISO may refer such customer to a third party. ISO will assist potential merchants in completing all documentation required for application to the Merchant Program. ISO will not change any term on any Merchant Agreement without Cynergy Data's prior written consent. Commencing in the first full month that is ninety days after the execution of this Agreement, ISO will begin submitting, each and every month, a minimum of either 75 approved Merchants, or $250,000 of new Visa/MasterCard processing volume, to Cynergy Data. ISO will not use any marketing materials without Cynergy Data's prior written consent.

**3.2 Equipment and Supplies.** ISO will sell or lease to Merchants all hardware necessary to participate in Member's merchant program. Cynergy Data will have no responsibility or liability with regard to Merchant equipment leases or sales. ISO will indemnify Cynergy Data for any

4

claims, losses or liabilities in connection with such equipment leases or sales, including but not limited to costs and reasonable attorneys fees expended by Cynergy Data in connection with a lawsuit brought by a Merchant related to an equipment lease or sale. ISO will install and maintain such equipment. ISO will provide all supplies necessary for the Merchant to perform its duties under the Merchant Agreement.

**3.3 Training.** ISO will train Merchants on the operation of all equipment and the Merchant Program.

**3.4 Information.** Cynergy Data and Member may conduct financial and procedural audits of ISO to confirm compliance with this Agreement and the Rules. ISO will supply Cynergy Data or its representatives with information requested by it for this, or any other purpose, no later than 7 days from the receipt of such request.

**3.5 Customer Service.** ISO will provide terminal repair and deployment and first-line customer service. ISO will download terminals, and train Merchants on terminal use. ISO will render all services in an ethical and professional manner, consistent with the standards adopted by Cynergy Data.

**3.6 Acceptance of Merchants.** Cynergy Data retains the right to: A) review, and approve or disapprove, the acceptance of Merchant Agreements into the Merchant Program, and B) terminate a Merchant from the Merchant Program.

**3.7 Conduct of Business.** ISO will conduct its business in an ethical and professional manner. ISO and each salesperson of ISO will execute the ethics statement attached as Exhibit B.

**3.8 Non-Solicitation.** Except as otherwise provided in Section 2.6.B, during the term of this Agreement and for 5 years after termination of this Agreement or of any Merchant Agreement, ISO, nor any salesperson, principal or entity in which such principal has any interest, will not directly or indirectly solicit or endeavor to obtain as a customer for credit or debit card processing services, or contract with, any Merchant for credit or debit card processing services. Further, unless otherwise agreed, during the term of this Agreement and for 2 years after termination of this Agreement, ISO nor any salesperson nor any of ISO's principal owners or affiliates will not, directly or indirectly, contract with Member other than pursuant to this Agreement.

**3.9 Background Check.** ISO will submit to a background check as deemed appropriate by Cynergy Data. ISO will perform a background check on all salespeople.

**3.10 Sales Representatives.** ISO will report to Cynergy Data the name, signature, photo identification, sales office location, and social security number of all salespeople that represent the Merchant Program to prospective Merchants. ISO will update such report as new salespeople are added or as salespeople are terminated. ISO will actively and diligently monitor is sales representative to ensure compliance with applicable laws and rules. ISO will take immediate action to rectify any non-compliant activity, or activity which could cause harm to Cynergy

5

Data's or Member's reputation or business. ISO will be responsible for ensuring that all salespeople comply with the terms of this Agreement, and ISO will be liable for their failure to comply.

### 3.11 Merchant Losses and Reserve Account.

A. <u>Merchant Losses</u>. All Merchant Losses incurred by Cynergy Data, by ISO's brought to Cynergy Data by ISO or Member for any reason will be borne 100%, including but not limited to 100% of any amount incurred by Cynergy Data or Member arising out of ISO's or any ISO sales representatives' negligence or fraud. ISO will notify Cynergy Data immediately of any information concerning any Merchant that would indicate that Cynergy Data may incur a Merchant Loss.

B. <u>Deduction</u>. Each month Cynergy Data shall deduct the amount of any Merchant Loss incurred the previous month from that month's Compensation. If the amount of the Merchant Loss exceeds the amount of the Compensation, Cynergy Data shall have the right to deduct the amount of the Merchant Loss from the Reserve Account and, in addition, Cynergy Data shall have the right to set off any unpaid Merchant Loss from any future Compensation.

C. <u>Reserve Account</u>.

   i. Establishment. ISO will maintain at the financial institution designated by Cynergy Data a Reserve Account, which will be funded with an initial deposit to Cynergy Data of $ 10,000 and by Cynergy Data withholding from ISO's Compensation 5 basis points multiplied by Merchants' monthly dollar volume of Transactions, and crediting such amount to the Reserve Account. Cynergy Data has the right to off set from the Compensation and from the Reserve Account 100% of the amount of any Merchant Loss and any amount owed to Cynergy Data under this Agreement. If the amount owed to Cynergy Data also exceeds the amount of Compensation otherwise owed to ISO, ISO will immediately forward to Cynergy Data all amounts owed. Notwithstanding anything to the contrary herein, the Reserve Account shall be capped at $250,000.

   ii. Funding. If any funds are withdrawn from the Reserve Account by Cynergy Data, ISO will, within 24 hours, restore the Reserve Account to the amount in the Reserve Account immediately preceding the withdrawal.

   iii. Term. ISO will maintain the Reserve Account for as long as ISO is receiving Compensation. Upon termination of this Agreement, ISO shall deposit such amount as is necessary to cause the balance of the Reserve Account to be the greater of either: a) $10,000, or b) 1% of Merchants' dollar volume of Transactions during the month previous to the month of termination, the remaining balance, if any, of which will be returned within 270 days after termination of all Merchant Agreements.

   iv. Security Interest. Cynergy Data will have a lien and security interest in the

6

Reserve Account and in all funds contained in the Reserve Account to secure all obligations of ISO under this Agreement. ISO agrees to execute all documents reasonably requested by Cynergy Data to secure Cynergy Data's interest in the Reserve Account. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, Cynergy Data may direct the disposition of the funds within the Reserve Account and the financial institution holding such Reserve Account shall comply with such direction without further consent of ISO. Cynergy Data may charge any amounts due to Cynergy Data against the Reserve Account at any time. ISO will not attempt to withdraw funds from or terminate or grant a security interest in the Reserve Account without Cynergy Data's prior consent. ISO will not grant to any third person a security interest in the Reserve Account, nor will it pledge, assign, or permit any lien to attach to the Reserve Account.

## IV. Mutual Obligations

**4.1 Representations and Warranties.** Each party represents and warrants to the other that:

A. <u>Good Standing</u>. Each party is a corporation or limited liability company organized, validly existing and in good standing under the laws of the State where its principal office is located.

B. <u>Full Authority</u>. Each party has full authority and corporate power to enter into this Agreement and to perform its obligations under this Agreement.

C. <u>Sale of Information</u>. Neither party will sell, purchase, provide or exchange Credit Card or Debit Card account numbers or Merchant information, or any other confidential information, to any third party without the prior written consent of the other party.

D. <u>No Violation</u>. Neither party's performance of this Agreement will violate any applicable law or regulation or any agreement to which that party may now be bound.

E. <u>Enforceability</u>. This Agreement represents a valid obligation of that party and is fully enforceable against it.

F. <u>Compliance</u>. Both parties will comply with the terms of this Agreement, with the Rules, and with all applicable state and federal laws and regulations.

G. <u>No Litigation</u>. Neither party nor its officers and directors are a party to any pending litigation that would have an impact on this Agreement and have never been fined or penalized by Visa or MasterCard.

**4.2 Confidentiality**

A. <u>Information</u>. ISO and Cynergy Data each agree that it will not use for its own purposes, will not disclose to any third party, and will retain in strictest confidence all

information and data belonging to or relating to the business of the other (including without limitation the terms of this Agreement, information related to VIMAS, and information related to Merchants, all of which the parties agree belong to Cynergy Data), and that each party will safeguard such information and data by using the same degree of care and discretion that it uses to protect its own confidential information. No party will be obligated to maintain the confidentiality of information: (i) it is required to reveal in performing its obligations under this Agreement, (ii) that is or becomes within the public domain through no act of the disclosing party in breach of this Agreement, (iii) was in the possession of the disclosing party prior to its disclosure under this Agreement, and the disclosing party can prove that, (iv) received from another source that has no restriction on use or disclosure, or (v) is required to be disclosed by state or federal law. Cynergy Data shall have the right to inspect ISO's premises and the premises of all sales personnel to ensure that confidential information is properly protected from disclosure, damage or theft.

B. Remedy. In the event of a breach of this section, the parties agree that the non-breaching party will suffer irreparable harm, and that the amount of monetary damages would be impossible to calculate. Thus, the non-breaching party will be entitled to injunctive relief in addition to any other rights to which the non-breaching party may be entitled, without the necessity of proof of actual damages.

**4.3 Name and Trademarks.** Neither party will use the other's name or trademarks in any promotional or marketing materials without prior written consent. Upon ISO's request, Cynergy Data will grant to ISO a limited, non-exclusive license to use the name "Cynergy Data" and to use the "Cynergy Data" trademark when conducting business on behalf of Cynergy Data under this Agreement. Unless ISO is registered with Visa and MasterCard, all telephone lines must be answered "Cynergy Data", and ISO must identify itself in all correspondence with Merchants and the public as "Cynergy Data". ISO understands and agrees that this Agreement confers, and ISO shall obtain, no other right to Cynergy Data's name or trademarks by virtue of such use. ISO shall not use the Visa or MasterCard trademark on marketing materials, such as business cards or letterhead.

**4.4 Indemnification.**

A. Indemnity. ISO will indemnify and hold Cynergy Data harmless from and against any and all Merchant Losses for which ISO is responsible under this Agreement, claims, demands, loss (financial or otherwise), damage, liabilities, costs, fees, increased taxes or expenses (including without limitation, court costs and reasonable attorneys' fees), which may be incurred or which may be claimed by any person or as a result of: (A) acts or omissions of ISO, its directors, officers, employees or agents relating to the exercise of, or the failure to exercise, its obligations, including, but not limited to, any representation to Cynergy Data or to any Merchant by ISO, its officers, directors, or salespeople and any negligence, fraud, or misrepresentation by ISO, its officers, directors or salespeople, or (B) any breach of this Agreement or any other agreement between ISO and Cynergy Data. Cynergy Data will indemnify and hold ISO harmless from and against any and all claims, demands, losses, damages, costs, fees or expenses (including without limitation court

8

costs and reasonable attorney's fees), which may be incurred or which may be claimed as a result of Cynergy's failure to perform any of its obligations under this Agreement.

B. <u>Procedure</u>. Each party will promptly notify the other of any claim, demand, suit or threat of suit of which it becomes aware which may give rise to a right of indemnification under this Agreement. Both parties will cooperate in the prosecution of such suit.

**4.5 Attorneys' Fees.** If an attorney is employed by any party to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and court costs.

**4.6 Damages.** In no event will any party be liable for any special, incidental, consequential or punitive damages of any nature or for any reason whatsoever regardless of the form or action, whether in contract, tort, or otherwise even if advised of that possibility. Except for the liability arising from gross negligence, recklessness, or willful misconduct, the total cumulative liability of Cynergy Data in the aggregate for damages arising from any breach of this Agreement or for any other claims under this Agreement, shall not exceed an amount equal to the lesser of (i) fees derived by Cynergy Data attributable to this Agreement if this Agreement has been in effect for less than 4 months, or (ii) fees derived by Cynergy Data attributable to this Agreement during the last 4 months of this Agreement, measured as of the date the liability accrues.

## V. Compensation

**5.1 ISO Compensation and Cynergy Data Fees.** On or about the 20th calendar day of each month, Cynergy Data will credit via ACH into the ISO Account an amount equal to the Compensation. Notwithstanding the foregoing, ISO hereby directs Cynergy Data to pay 83% of all Compensation due to ISO under this Agreement to ISO and to pay 17% of all Compensation due to ISO under this Agreement to Pacific Card Service, LLC for so long as ISO shall be entitled to receive Compensation. The Compensation will be computed monthly as of the last day of each calendar month. At the time of each remittance to ISO (or Pacific Card Service, LLC), Cynergy Data will deliver to ISO a statement detailing the computations used by Cynergy Data in arriving at the Compensation. The fees set forth on Schedule A, Fees, may be amended by Cynergy Data if the minimum referral obligation set forth in Section 3.1 is not met. ISO will receive such Compensation for as long as Cynergy Data receives revenue attributable to Merchants; provided, however, that the Compensation will cease upon termination of this Agreement by Cynergy Data due to ISO's breach of any material term of this Agreement. If ISO disputes any Compensation paid to it, ISO agrees to inform Cynergy Data within 60 days of the date of payment. ISO waives any claim against Cynergy Data regarding any Compensation it fails to dispute within such 60-day period.

**5.2 Merchant Fees.** ISO will determine all fees charged to Merchants subject to Cynergy Data's and Member's approval. All such fees must be above those amounts set forth on Exhibit A.

## VI. Term, Termination, Default

6.1 **Term.** This Agreement will become effective on the Effective Date, will remain in effect for a period of 3 years ("Initial Term"), and will automatically renew for additional successive 1-year periods ("Renewal Term") unless terminated earlier in accordance with the provisions of this Agreement.

6.2 **Termination.** Notwithstanding the above, the parties will have the following rights:

  A. <u>Automatic Termination</u>. This Agreement will automatically terminate if: (i) Visa or MasterCard prohibits Cynergy Data from providing, or prohibits Member from allowing Cynergy Data to provide, the services set forth in this Agreement, or (ii) Member is no longer a member of MasterCard or Visa.

  B. <u>Termination Without Cause</u>. Either party may terminate this Agreement at the end of the Initial Term or any Renewal Term upon written notice of termination to the other party at least 90 days prior to the end of the Initial Term or any Renewal Term.

  C. <u>Termination For Cause</u>. Any party may terminate this Agreement upon the occurrence of an Event of Default.

6.3 **Default.** Each of the following occurrences will constitute an Event of Default under this Agreement:

  A. <u>Nonpayment</u>. Either party fails to pay the other when due any amount due under this Agreement and such failure continues for a period of 90 business days after written notice has been sent to the non-paying party.

  B. <u>Financial Instability</u>. Either party: (i) files for bankruptcy, receivership, insolvency, reorganization, dissolution, liquidation or any similar proceeding, (ii) has a proceeding instituted against it and such proceeding is not dismissed within 60 days, (iii) makes an assignment for the benefit of its creditors or an offer of settlement, extension or composition to its creditors generally; or (iv) a trustee, conservator, receiver or similar fiduciary is appointed for that party or substantially all of that party's assets.

  C. <u>False Representation</u>. Any representation or warranty made by either party or any of its employees, officers, or directors proves to have been false or misleading in any material respect as of the date made, or becomes false or misleading at any time.

  D. <u>Breach</u>. Either party fails to observe any material obligation specified in this Agreement, and such failure is not cured within 30 days of receipt of written notice thereof from the non-breaching party. Notwithstanding the previous sentence, the fourth such breach automatically will be deemed an Event of Default without the opportunity to cure.

  E. <u>Goodwill</u>. ISO engages in any act or omission that may damage the reputation, business, or goodwill of Cynergy Data.

6.4 **Certain Post-Termination Rights.** No termination of this Agreement will affect any right of ISO or Cynergy Data with regard to the collection of Compensation or fees owed. The Compensation will be due to ISO for as long as Cynergy Data is deriving revenue from any Merchant, unless the Agreement is terminated by Cynergy Data due to a material breach of the Agreement by ISO. After any termination of this Agreement, ISO shall continue to bear total responsibility for all Merchant Losses and for all amounts then due or which thereafter may become due to Cynergy Data under this Agreement.

## VII. General

7.1 **Assignability.** Neither party will have any right to assign this Agreement without the prior written consent of the other party and any unauthorized attempted assignment will be null and void. If ISO enters into a purchase or stock exchange agreement with a third party which would effectuate a sale or merger of ISO's business without Cynergy Data's written consent, Cynergy Data will have the right to terminate this Agreement immediately. ISO may assign or sell its rights to Compensation to a third party upon Cynergy Data's prior written consent; provided however, Cynergy Data shall first have the right to purchase such Compensation rights from ISO.

7.2 **Notice.** All communications under this Agreement will be in writing and will be delivered in person or by mail courier, return receipt requested, addressed to the addresses specified in the opening paragraph of this Agreement and to the attention of that party's President. The parties may, from time to time, designate different persons or addresses to which subsequent communications will be sent by sending a notice of such designations in accordance with this Section.

7.3 **Entire Understanding, Amendment.** This Agreement, including the Exhibits which are incorporated by reference, sets forth the entire understanding of the parties relating to its subject matter, and all other understandings, written or oral, are superseded. Except as otherwise provided in this Agreement, this Agreement may not be amended except in a writing executed by all parties. Facsimile and electronic writings shall be deemed sufficient for all purposes under this Agreement.

7.4 **Severability.** If any provision of this Agreement is illegal, the invalidity of such provision will not affect any of the remaining provisions, and this Agreement will be construed as if the illegal provision is not contained in the Agreement. This Agreement will be deemed modified to the extent necessary to render enforceable the remaining provisions.

7.5 **No Waiver of Rights.** No failure or delay on the part of any party in exercising any right under this Agreement will operate as a waiver of that right, nor will any single or partial exercise of any right preclude any further exercise of that right.

7.6 **Successors and Assigns.** Subject to Section 7.1, this Agreement will inure to the benefit of and will be binding upon the parties and their respective permitted successors and assigns. This Agreement will not be deemed to be for the benefit of any third party.

**7.7 Applicable Law and Venue.** The Agreement will be deemed to be a contract made under the laws of New York, and will be construed in accordance with the laws of New York without regard to principles of conflicts of law. Any claim arising out of this Agreement shall be litigated in the appropriate State or Federal court located in New York.

**7.8 Independent Contractors.** Cynergy Data and ISO will be deemed to be independent contractors and will not be considered to be agent, servant, joint venturer or partner of the other.

**7.9 Construction.** The headings used in this Agreement are inserted for convenience only and will not affect the interpretation of any provision. All sections mentioned in the Agreement refer to section numbers of this Agreement. The language used will be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction will be applied against any party.

**7.10 Force Majeure.** Neither party will be liable to the other for any failure or delay in its performance of this Agreement if such failure or delay arises out of causes beyond the control and without the fault or negligence of such party.

**7.11 Survival.** All agreements that by their context are intended to survive the termination of this Agreement including, but not limited to Sections 2.6, 2.7, 2.8, 3.8, 3.10, 3.11, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 6.4, and 7.7 will survive termination of this Agreement.

| Process America | CPS Group, Inc. d/b/a Cynergy Data |
|---|---|
| By: *[signature]* | By: _____ |
| Name: Kim Ricketts | John Martillo |
| Title: CEO | President |
| 5/19, 2004 | _____, 2004 |

THE UNDERSIGNED HEREBY UNCONDITIONALLY AND IRREVOCABLY GUARANTEES THE PERFORMANCE IF ALL OF ISO'S OBLIGATIONS HEREUNDER

Pacific Card Service, LLC

By: *[signature]*
Name: Brian Clelroe
Title: Owner
May 21, 2004

hh11/31/03

Exhibit A
Cynergy Data Fees

Cynergy Data will retain the following amount for the services rendered under this Agreement:

| Item | Detail | Pricing |
| --- | --- | --- |
| V/MC Interchange plus Dues & Asses. | | Pass thru |
| Auth/Capt/Settle (Vital-Ptech) | .03+.03+.03 | 0.09 |
| Batch Header | | 0.10 |
| ACH rejects | Per Item | 5.00 |
| Voice Auth | | 1.00 |
| IVR | | 0.75 |
| Chargebacks | | 15.00 |
| Retrievals | | 5.00 |
| Bin sponsorship | | 0.02% |
| Fraud Monitoring | Per Settlement | 0.02 |
| NCBK Rolling Reserve | | 0.05% |
| AVS | | 0.03 |
| Voice AVS | | 1.50 |
| Account on File | | 2.50 |
| Statement w/envelops | | 2.00 |
| Merchant Plate | | 1.00 |
| T&E | | 0.10 |
| Annual Fee | | 5.00 |
| Cancellation Fee | | 50.00 |
| Debit (+Network) | | 0.15 |
| Merchant Module Access | Monthly | 5.00 |
| Help Desk per call | After Hours Only | 5.50/call |
| EBT Transactions | | 0.10 |
| Wireless Activation | | 25.00 |
| Wireless Mo Access | | 15.00 |
| Wireless Transaction | | 0.05 |
| CD monthly reporting | Monthly | 50.00 |
| Vimas Online Access | Monthly | 19.95 |
| ESA Program Sign Up Bonus | Per Activation | 40.00 |
| ESA Program Basis Points | Monthly | 10 bs pts |
| Discover Program Sign Up Bonus | Per Activation | 10.00 |

13

Exhibit B

Ethics Statement

As sales professional under the registration of Cynergy Data, you are required to maintain the highest ethical standards professional conduct at all times. We recognize the need to provide you with consistent guidelines to achieve this goal; therefore, the following Ethics Statement has been formulated. The Ethics Statement is a condition of participation in the program and must be strictly adhered to all times.

1. I will maintain the highest standards of professionalism and will comply with the company policy at all times.
2. I will not broker or sell any other product or service that is not offered by Cynergy Data, without their written consent.
3. I understand and agree that all advertising and marketing materials must be received prior to approval according to the card plan, bank and company policy.
4. I will adhere to simple truth and integrity and will not engage in any misleading or deceptive sales practices.
5. I will provide sound professional advice in all sales presentations and sales calls and will remain knowledgeable of industry services.
6. I will conduct due diligence and complete all site inspections truthfully. I will accurately report the nature of any business in which a prospective customer in engaged. I will promptly report to my appropriate manager or to the appropriate person at the corporate office, any notice which I may receive of any change in any customer's business which might expose the company to financial risk or if said business would be out of compliance with state policies.
7. I will quote all rates and charges consistent with Cynergy Data's rate guidelines and I will not quote rates for other card types that I am not specifically registered to market.
8. I will assure that all checks and/or payments are properly made out to the company and not to me personally.
9. I will conduct all sales presentations in a positive manner, relying upon my ability and the value of Cynergy Data to obtain customers. I will not, in any way, demean or speak negatively of my competition.
10. I will maintain the confidentiality of information provided to me by any prospective customer or company and will not reveal any such information without the proper consent or except to the company and its agents.